UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHY DARLINE McDANIEL,

     Plaintiff,                  Civil Action No. 2:16-cv-00081

vs.                          JUDGE ALETA A. TRAUGER
                          MAGISTRATE JUDGE PATRICIA T. MORRIS

SOCIAL SECURITY ADMINISTRATION,

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 17), be **DENIED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security denying Plaintiff Kathy Darline McDaniel's claim for Supplemental Security Income benefits

("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq.* (Doc. 25). The matter is currently before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 17).

On February 26, 2013, Plaintiff filed an application for SSI alleging a disability onset date of January 1, 1983. (Tr. 142-47). The Commissioner denied her claim. (Tr. 50-83). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on April 24, 2015, before ALJ Edward Bowling. (Tr. 26-49). The ALJ issued a decision on August 6, 2015, finding Plaintiff not disabled. (Tr. 8-24). On August 16, 2016, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on October 6, 2016. (Doc. 1). Plaintiff filed the instant Motion on February 16, 2017, (Doc. 17), and the Commissioner responded on March 20, 2017, (Doc. 19).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker*

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than [twelve]
> months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement . . . or a combination of impairments that
> is severe and meets the duration requirement, we will find that
> you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled. (Tr. 11-21). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 26, 2013, her application date. (Tr. 13). At Step Two, the ALJ concluded that the following impairments qualified as severe: borderline intellectual functioning; right ankle fracture repaired with hardware; depression; anxiety; and headaches. (Tr. 13-14). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 14-15). Thereafter, the ALJ found that during the relevant time period Plaintiff had the residual functional capacity ("RFC") to perform light work except for the following limitations:

> The claimant can lift 20 pounds frequently and 10 pounds occasionally. She could sit, stand and walk 6 hours in an 8-hour workday. She can occasionally climb ramps, stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to hazards. The claimant is limited to simple, routine, repetitive tasks, in that she can apply common sense understanding to carry out instructions. The claimant can have frequent contact with coworkers and the public.

(Tr. 15-16). At Step Four, the ALJ found Plaintiff did not have past relevant work. (Tr. 19). Proceeding to Step Five, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and thus Plaintiff was not disabled. (Tr. 20-21).

### E.     Administrative Record

#### 1.     Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.     Application Reports and Administrative Hearing

##### i.     Function Report

On March 26, 2013, Plaintiff filled out a Function Report which appears in the administrative record. (Tr. 169-76). She summarized her condition with "my elbow keeps popping out of [its] socket." (Tr. 169). She only did limited house work, and "[t]he throbbing and the swelling wakes me up in the middle of the night." (Tr. 170). She identified no difficulties performing personal care activities. (*Id.*). She continued to prepare sandwiches, frozen dinners, and other "lite [sic] meals" on a daily basis, which took approximately twenty minutes. (Tr. 171). For about thirty minutes each day, she picked up around the house, did laundry, and washed dishes. (*Id.*). She could not, however, do "yard work because my elbow goes out." (Tr. 172).

Once a week, Plaintiff left the house or rode in a car; she could not drive because she did not have a license. (*Id.*). She went grocery shopping once a month for about two hours, and despite her deficit in money, she remained capable of handling her own finances. (*Id.*). Her hobbies included "reading" and watching television every day. (Tr. 173). "I don't go out much so I read more and watch T.V. more." (*Id.*). When she had visitors (which happened once a month) she was able to engage them socially. (*Id.*). Even so, "I don't get to socialize as often with friends and family." (Tr. 174).

Prompted to mark abilities she struggled with, she marked: lifting, reaching, completing tasks, and using hands. "I can only lift 5 pounds at most. I can't straighten my elbow when it's out or swollen. I cannot complete tasks or use my right hand when my elbow is out or swollen." (*Id.*). She remained able to pay attention "[a]ll day," and followed both written and spoken instructions "[v]ery well." (*Id.*).

### ii.      Plaintiff's Testimony at the Administrative Hearing

The ALJ opened the hearing with questions designed to illustrate Plaintiff's background. Asked whether she held a driver's license, she said "I just don't drive anymore" because it got suspended, and "when I took the test I had to have somebody to read the questions to me because I don't read very well." (Tr. 31). On schooling, she indicated she "completed the fifth grade" and went straight to "the seventh grade" because "they skipped me from the fifth to the seventh." (*Id.*). Puzzled, the ALJ pressed her for more detail and she explained that "they had to skip me through grades because I was so old they couldn't keep me in that same grade." (Tr. 32). She indicated "I was in special ed.

ever since I went to school. . . . Math, reading, the whole thing, I was in special ed. for all my classes." (Tr. 32-33). "I can barely read a three letter word." (Tr. 33).

Plaintiff worked briefly at McDonald's making biscuits, but she had to stop "[b]ecause I hurt my elbow." (Tr. 34). In addition, her supervisors "used to get all frustrated" that she "couldn't concentrate, shaky, and they'd just talk to me and try to calm me down, and I still couldn't concentrate." (*Id.*). Before that job, she worked as a cashier at Wal-Mart during the Christmas season, and "I didn't do good there either, really. I had to have help there. I had to have the manager to help me on that too." (Tr. 35). She struggled in crowds of people. "I can't even go to family functions. I get really agitated and nervous, shaky." (*Id.*). She could only stand ten to fifteen minutes at a time because "[m]y legs get really weak, shaky, feel rubbery, hurt, pain just shoots up my legs into my back." (Tr. 36). Part of this pain derived from a "four-wheeler accident" that "crushed my ankle bone" several years prior to the hearing. (Tr. 37). She hurt her elbow, by contrast, "tearing down an old house" while "turning the steering wheel on the truck," and now "it'll just pop out of [its] socket for no reason." (*Id.*).

Plaintiff then outlined a limited daily routine: "I get up, cook breakfast, clean the house real quick, and go back to the bedroom and that's where I stay all day." (Tr. 38). She had no hobbies, but "I watch TV in my bedroom." (Tr. 39). Her friend—the daughter of her roommate—"takes me to everything I have to go to" and "does all my forms and she does all my paperwork." (Tr. 41).

### iii.    The VE's Testimony at the Administrative Hearing

The VE began by classifying Plaintiff's past work. "The cashier position is normally a light level job. It's unskilled, SVP of 2," though in his experience the work was, "medium normally at Wal-Mart." (Tr. 42). He then classified her McDonald's job as "a short order cook. That is a light level job. It is semi-skilled, SVP of 3, . . ." (*Id.*). Plaintiff indicated as well that she worked for about a month at a "charcoal plant" bagging and shipping charcoal. (Tr. 43). In that job, the bags she handled weighed about ten pounds, but the judge discounted the job as a whole because Plaintiff made "only $385 . . . ." (Tr. 44).

The ALJ then posed his first hypothetical to the VE: "Assume this individual is limited to 10 pounds frequently, 20 pounds occasionally, sit, stand, and/or walk up to six hours in an eight-hour day, occasional climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling. This individual would be, as a result of mental limitations, would need to avoid concentrated exposures to hazards, would also be limited to simple routine repetitive tasks, and by that I mean they could apply common sense, understanding, and carry out oral, written, and diagrammatic instruction; frequent contact with co-workers and the public. Can that person do any of the past work of the claimant?" (Tr. 44). The VE replied that such a person could perform the "job of a cashier as is normally performed in the economy and as per the DOT," but not her other past work. (Tr. 45). Other jobs existed in the national economy as well: "inspector, tester, or sorter" (with 131,000 national jobs), "production worker" (with 220,000 national jobs), and "hand packager or packer" (with 326,000 national jobs). (*Id.*).

The ALJ next asked the VE to imagine an individual "unable to set meaningful or realistic goals," with an "inability to self-direct, would be unable to deal with crowds in order to use public transportation, would be unable to interact well enough with others to hold competitive employment, would be severely limited in a cognitive domain to where she would overreact in personal problems or presence of others. . . . [B]ased on those descriptions, is that individual capable of employment?" (Tr. 45-46). The VE indicated such an individual would not be able to perform any substantially gainful employment in the national economy. (Tr. 46).

In concluding, the ALJ requested any evidence of "psychological testing," and Plaintiff's counsel advised consideration of Listing 12.05(c), invoking the "full scale and . . . performance IQ between 60 and 70 and . . . other problems associated with it . . . ." (Tr. 47-48). To this, the ALJ reminded Plaintiff's counsel that "any 12.05 would need to be contingent upon what happened prior to the 22nd birthday and that's why . . . school records, in my opinion, are important . . . to help support that the IQ would go back that far." (Tr. 48).

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.*

§ 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish

the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff furnishes two discrete arguments in her Motion for Summary Judgment: (1) the ALJ failed to adequately consider whether Plaintiff met Listing 12.05(C), (Doc. 18 at ID 410-23); and (2) the ALJ should have granted more weight to the record opinion from consultative examiner Dr. Valerio, (*Id.* at ID 423-26). I address each argument in turn.

#### 1.    Listing 12.05(C)

Plaintiff first avers the ALJ erred in failing to include any discussion of Listing 12.05(C) at Step Three of his analysis, particularly considering the record evidence from consultative examiner Dr. Valerio of "a valid full-scale IQ score of 67." (Doc. 18 at ID 413). At issue, in particular, is the ALJ's brief engagement with Plaintiff's claimed mental impairment in the written decision:

> Because there was no indication of the inconsistent behavior from other providers, the undersigned assigned little weight to Dr. Valerio's opinion. **Further, in her treatment records from Volunteer Behavior in Exhibit 1F there is no mention of intellectual disability and the only estimate of her intelligence was as average.**

(Tr. 19) (emphasis in original). Plaintiff suggests the ALJ's "paltry rationale" consisted of a mere two sentences and was vague, insofar as the language "inconsistent behavior" remains unclear. (*Id.* at ID 414). She also says the rationale cannot survive scrutiny due to other evidence that her intelligence could not be determined, (*Id.* (quoting (Tr. 264))), and that her "insight and judgment were considered to be limited," (*Id.* (citing (Tr. 259, 265))).

At the time the ALJ rendered his disability determination, Listing 12.05 outlined the requirements for proving "Intellectual disability," which referred to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Claimants who sought to prove they satisfied the requirements set forth in Listing 12.05(C) needed to show—in addition to onset of their impairment before age 22—"[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function[.]" *Id.* § 12.05(C).

A review of the record alongside the ALJ's opinion discloses no error on the grounds Plaintiff invokes. After summarizing Dr. Valerio's opinion, the ALJ simply concluded that the remainder of the record did not note Plaintiff acting in similarly "unusual" fashion, and the IQ test appeared anomalous among the general paucity of evidence for intellectual disability. (Tr. 317) ("She moved her head in an unusual swaying fashion. She licked her lips nervously at times. She often averted eye contact. Speech was rapid and monotone. The examiner immediately suspected that she was somewhat limited and the evaluation was conducted using simplified vocabulary."). As the ALJ notes (and as Plaintiff appears to concede), on the *only* occasion in which Plaintiff's intelligence was estimated in the record aside from Dr. Valerio's opinion, it was estimated to be "[a]verage." (Tr. 257). The ALJ also reasonably discounted Plaintiff's statements as to her intellectual functioning as incredible, a finding Plaintiff does not challenge. (Tr. 17). Indeed, Plaintiff manages to

summon only three pages of support for her position in her brief, and even those pages are not entirely useful in making her case. *See* (Tr. 258-59) (documenting "[l]imited" insight and judgment, but "[n]ormal" thought content, "[o]rganized" thought flow, and "[g]ood eye contact"); (Tr. 264-65) (noting an inability to determine Plaintiff's intellectual functioning; describing her insight and judgment as "[l]imited," but observing "[n]ormal" thought content, alertness, and orientation). Without further proof of cognitive disability, the ALJ was permitted to assign little weight to the only IQ test in the record, and in turn, to rule out the possibility of Plaintiff meeting Listing 12.05(C). *See, e.g.*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Nor was the ALJ required to include this discussion at Step Three of his analysis, so long as his opinion makes clear the reason for his decision as to the relevant listing. *Accord Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014) (considering the ALJ's evaluation of Listing 12.05(C) criteria "at other steps of his decision" does not constitute improper post-hoc rationalization); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (upholding a Step Three analysis that rested on factual findings made "earlier in [the ALJ's] opinion"); *cf. McDonald v. Comm'r of Soc. Sec.*, No. 2:16-CV-14015, 2017 WL 4052190, at *9 (E.D. Mich. July 27, 2017) ("Later discussion in the opinion evaluates a number of factors relevant to the considerations present in Listing 12.04 as well, further nourishing the ALJ's Step Three reasoning."), *R. & R. adopted,* No. 16-14015, 2017 WL 4052373 (E.D. Mich. Sept. 13, 2017).

For these reasons, the ALJ's written decision betrays no Step-Three error, and his finding that Plaintiff failed to meet the criteria for any listing, (Tr. 14-15)—including Listing 12.05(C)—remains bolstered by substantial evidence.

## 2. Weight Accorded Dr. Valerio

Plaintiff next argues the ALJ was obligated to give good reasons for his weight assignment to Dr. Valerio, who supplied the "only . . . opinion from an examining source with regard to Plaintiff's intellectual deficits." (Doc. 18 at ID 423). In her view, the ALJ "failed to consider the opinion evidence in accordance with 20 C.F.R. § 404.1527," (*Id.* at ID 424), and moreover, the ALJ's failure to follow up with Dr. Valerio constituted a violation of the ALJ's "affirmative duty to fully develop the factual record upon which the decision rests." (*Id.* (citing 20 C.F.R. § 404.1520b(c))).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's] attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

Dr. Valerio was not a treating physician, and the ALJ was not required to supply "good reasons" for discounting his opinion; he was merely required to furnish enough "discussion of the evidence" to allow Plaintiff or "subsequent reviewer[s] to follow" his rationale. *Id.* The written decision remains perfectly clear in its articulation of the deficits of Dr. Valerio's findings for reasons discussed in the preceding section. *See, e.g.*, (Tr. 19) (observing "**no mention of intellectual disability**" in Plaintiff's other psychiatric records (emphasis in original)). Nothing more was required. *Accord, e.g.*, *Whited v. Comm'r of Soc. Sec.*, No. 114CV01287STADKV, 2018 WL 278743, at *4 (W.D. Tenn. Jan. 3, 2018) (reaffirming that an ALJ may discount medical opinions because the record fails to corroborate them); *cf. Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (sanctioning reliance on a non-examining physician because the written decision showed the ALJ subjected his opinion to "at least some scrutiny"). Plaintiff's related contention that the ALJ owed her an obligation to develop the record on her behalf is similarly unfounded and without merit. Such a duty only exists where the evidence before the ALJ is equivocal. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986) ("The lack of clear medical evidence, in light of the impairments suggested by the physicians, prevented fair review of Johnson's claim."); *cf., e.g.*, *Brown v. Comm'r of*

*Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (advising ALJs to "resist the temptation to substitute [their] own interpretation of medical records for that of a physician who has examined the records," but noting that no case law "even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered"). As the ALJ reasonably found, it was not.

Because the ALJ adequately discussed his reasons for according Dr. Valerio's opinion little weight, his weight-assignment as to Dr. Valerio is supported by substantial evidence. 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). The Court should find Plaintiff's corresponding misgivings unpersuasive.

### H.      Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 17), be **DENIED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2018                    S/ PATRICIA T. MORRIS
                                            PATRICIA T. MORRIS
                                            UNITED STATES MAGISTRATE JUDGE
                                            SITTING BY SPECIAL DESIGNATION